of the Republic of Iraq, and call Mr. Gottlieb first. Thank you, Your Honor. Good afternoon, and may it please the Court. As far as we are aware, this is the first case in U.S. history in which a foreign government has asked the United States courts to resolve an internal dispute over sovereignty and federalism. The core of this case asks which governmental entity within Iraq has the sovereign power to control the management and export of oil from the Kurdistan region. For years, the Kurdistan government has exported oil from the Kurdistan region under its 2007 oil and gas law. The Mnstry claims that the KRG may not do so because it has exclusive control. The executive branch has repeatedly adopted a position of neutrality in this dispute, which is unsurprising. This dispute is occurring at a time of profound instability and war against a brutal enemy where both parties, in this case, are indispensable U.S. allies in the fight. The federal courts have no place in this dispute under the political question doctrine, the Foreign Sovereign Immunities Act, and the active state doctrine. If I could turn first to the political question doctrine. This case presents a non-justiciable political question. I have a more fundamental question about the mootness issue. And first of all, I'm wondering about this 100,000 barrels. Did that happen or not? There's been discussion about there was that of this cargo that was on this ship that sat out outside of Galveston for a while, that some amount of that was actually sold to somebody in the United States. But then there was talk about maybe that didn't happen. I mean, it's just relying on somebody saying that to the paper. Did it or did it not happen? Your Honor, the ministry has not alleged that in their complaint. What they have alleged in their complaint is that the KRG sold and transferred title to the oil on the high seas. They have quoted in various briefs a stray statement from a KRG spokesman that some of the oil— And I'm asking you, because you represent the people that had that stray statement. Did that happen or did it not? No, it did not, Your Honor. And they have not alleged as such in their complaint. So, if we were to affirm the finding that you all don't have immunity and then send us back to the district court, what is there left to try that relates to the United States in any way? Your Honor, the case is not moot because there is a concrete injury alleged by the ministry. They have alleged a violation of Iraqi law and they have alleged a violation of their That is a concrete injury that remains live between the parties. But if there wasn't the 100,000 barrels or anything, then I can see that when they filed the complaint, they thought all that was going to happen, good faith argument, all that. But now we know it didn't. The ship left. It went somewhere else. There's nothing left that has any U.S. ties, is there? Well, I would agree that there are no direct effects in the United States, which is why this court should reverse the district court's decision on the Foreign Sovereign Immunities Act holding. But that would not make this case moot, Your Honor. What makes a case moot is if the court cannot fashion any effectual relief whatever. That is the standard from the Church of Scientology case. It is also the standard from this court's decision in MCI v. Credit Builders. The fact that relief may have become more difficult is not a reason to dismiss the case. And numerous forms of relief remain available to the ministry for their use. But the problem that I have is these other cases, for example, the one you just cited in the 28J, the party had asked for that relief. I mean, here we have you sort of forcing on the plaintiff relief they don't want. They don't want damages, and they don't want a declaratory judgment, and Judge Miller said it wasn't a declaratory judgment action. So to me, it seems weird to have the defendant forcing the plaintiff into some sort of relief that the plaintiff says they don't want in order to avoid mootness. A couple of points on that, Your Honor. The first is that in the cases involving plaintiffs who have disclaimed their right to certain remedies that are fairly in the complaint. The court has required far more than a representation in a brief in a court in order to withdraw from those. The court has required sworn declarations from the party to withdraw from requests for relief that were made below. That's what the court requested in the city. But I'm saying it wasn't made below. The judge construed this complaint as not stating a claim for declaratory judgment. That's page 16 of the order and memorandum opinion or whatever it's called. And then as well, they never asked for damages. So those are the two forms of relief that you could argue might still be around. So I'm not saying that they asked for it now they're trying to backtrack. They didn't ask for it. Your Honor, if you examine the complaint itself in the prayer for relief, which is tab 4 of our record excerpts, in their prayer for relief, they specifically request that the M.O.O. be declared the owner of the cargo and that title be awarded to the M.O.O. This court has held that that request, even if the property is no longer before the court, that that request is valuable and grants meaningful relief to a plaintiff because it can be used in future litigation. That is the holding from the case that we cited involving the destruction of property in the HUD case in the 28th Jail letter. Right. Christopher Village case. In that case, they did ask for declaratory relief. And so the holding was actually, well, you've asked for a declaratory injunction and something else. We can't give you the other two, but we can give you the declaratory. Here we have a court construing the same complaint, saying it's not a declaratory relief request. They are saying it's not a declaratory relief request. And so you, the defense, it's really a weird, this case has a lot of weird things to it. It is an unusual case, Your Honor. I think that it's impossible to read the language of the complaint and conclude that they did not seek declaratory relief. The words of prayer for relief, A, requested. But even beyond that, even if you- Let me ask you a question that's somewhat different than the attack here on your argument. What do you say with regard to the commercial exception to the Sovereign Immunity Act? I have grave concerns about this case and the political question doctrine. And to me, that also interlaced with whether or not this is really a commercial transaction. This dispute really is of the fault of even that exception. As I understand this dispute, it's between internal organs of a foreign country. It's not between a buyer and a seller of a commercial transaction. That's correct, Your Honor. There's no- I know you agree with that, but what relief, what do you think we should do with this case? We think you should dismiss this case- I understand. Why? On what ground? We think you should dismiss this case under the political question doctrine because the And because if you dismiss the case based on mootness, the case will just come back before this court in a matter of months when the same dispute is before it. And the political question doctrine has been properly- What is the dispute between these two elements of government other than the power of one to sell or not? The dispute is over whether the KRG has the authority to export oil under the American Constitution. Is that the controlling issue in the case? That is cause of action A, which is the in personam FSIA cause of action that they've raised. And it is, in fact, Your Honor, all that's left in the case because the court below dismissed their admiralty claims. When they claim that this case is merely about the possession of oil, the claim for possession was prayer for relief B, which was the in rem remedy they sought. Their admiralty claims have been dismissed from the case. The in personam claim is all that remains. And for that, they have myriad forms of relief available to them in the complaint. Moreover, Your Honor, they have said in their briefing that they only ever requested possession of the cargo. That's simply not true. They repeatedly told the district court below that they wanted possession of the cargo or its proceeds. That's record on appeal, page 1205. It's from their opposition to the motion. Let me return you to this thing. Is the question of whether this is a commercial transaction with an exception of the Sovereign Immunities Act and the question of the political question doctrine, in other words, if it's a commercial transaction, does that answer, I'll force you, Ari, the political question? It does not, Your Honor, because, well, first of all, there is a separate foreign sovereign immunities act. Of course. Of course. Which has direct effects. And we think that the act in question that's been challenged in this case is the act of export.  It still wouldn't answer the political question doctrine argument for two reasons. The first is that there are no judicially manageable standards for resolving this dispute. You could conclude that this is commercial activity under the Foreign Sovereign Immunities Act, but the cause of action would still require you to construe and interpret the Iraqi constitution, which is a young constitution where you have no precedent to guide you. It is a civil law system where the effect of stare decisis is uncertain, where you have two sovereigns on both sides of the case. Courts apply laws like that all the time. No, Your Honor. Courts do not decide disputes like this all the time. No court has ever decided a case like the ministry is asking this court to do. It's a young constitution. This is the critical question that was the bargain at the heart of the constitutional bargain. It would be like a Spanish court in 1819 deciding that it had jurisdiction to decide McCulloch versus Maryland in the Constitution. Okay, but there's one huge problem here, and that is you aren't giving the court that should be deciding this. The Iraqi Supreme Court the chance to do it because you don't even recognize that they exist. So your client is the one that has created this issue. The Iraqi ministry people say, we filed the lawsuit in Texas in aid of the lawsuit we have in Iraq that you all steadfastly refuse to be a part of. So it seems a little hollow for you to say, oh, yes, we should have Iraq decide its own constitution, which sounds really good to me, but then you refuse to recognize anybody is the judicial authority there, which makes it kind of hard to resolve. Your Honor, our client has been steadfastly negotiating this issue with the federal government in Iraq for years now. This has been a central and critical issue that the parties have negotiated in a political and diplomatic setting. There is no rule that all disputes must be justiciable in a court. There are certain disputes that are committed to the political branches. Yeah, but disputes over commodities and property and who owns what within a country, like if the United States said it owns Dallas and wanted to sue Texas to that effect, I think the U.S. Supreme Court would think it has jurisdiction to decide that. So if that's what we're saying is some portion of Kurdistan, their oil, their reserves, whatever you want to call it, belongs to the whole people of Iraq. That strikes me as the kind of thing that a Supreme Court would be empowered to decide. First of all, Your Honor, in the Occidental case, this court held that this type of dispute is not a type of case that a U.S. court can decide. When you have foreign sovereigns that are disputing ownership over natural resources, as this court had in the Occidental case, that is inherently a political question, and it is imprudent for the courts to act on that without guidance from the executive branch in the first instance. Second of all, Your Honor, our client has not appeared in the Iraqi Supreme Court. That is true. The argument that we have advanced is that the Iraqi Supreme Court has not been constituted as Article 92 of the Iraqi Constitution requires it to be. That is a choice that the legislature or the parliament— I mean, the Republic of Texas takes the position that the state courts of Texas are not valid and the federal courts don't govern them because they're a separate country and so on and so forth, and yet somehow the state continues to insist that people, if they want any rights, are going to have to come and—the rights to be vindicated are going to have to come to the courts, so—and doesn't recognize the Republic of Texas courts or their efforts. And I'm sure the people there have very steadfast beliefs, too. I'm not being critical of it. It simply doesn't work when you have people decide not to recognize the institutions of a country. Your Honor, that is an American choice. It is the choice we have made in our judicial system to create a rule of default judgment. The Iraqi legal system has not made that choice. It is an entirely separate legal system. It's based on a mix of Sharia and secular law. It's a civil law system where the concept of stare decisis is foreign. And the Iraqis have not made the choice to provide a default judgment mechanism or to provide a rule that says, if a party doesn't appear here, the available preliminary injunctive relief remedies that you have. This court should not make that decision for Iraq. That is a decision for the Iraqis to make about how to structure and organize their judicial system. Numerous remedies remain available to them in this dispute. There are political and diplomatic remedies available to them in Iraq. There are political and diplomatic remedies available to them in the United States. That is not a reason to supply that remedy for them. If I could turn back to the mootness question just to address that. Let me ask you one other thing on that, on the mootness, which is, given that there wasn't any deal in the United States ever done, is there a John Doe buyer, or is that kind of over with? Your Honor, I— John Doe buyer of this cargo. The plaintiff is the master of their complaint on the John Doe issue. My client, my client's argument is that there is no jurisdiction over it under the both FSIA and the political question doctrine. There is clearly a live injury because they have pleaded harm from their, harm to their possessor. My question maybe wasn't clear. Is there a person or company in the United States who fills the bill of John Doe buyer as alleged in their complaint? Your Honor, I don't know the answer to that question, and I would submit to you that it We are a foreign sovereign. We have represented that we have immunity, and we have answered their complaint as it is alleged. We have taken the facts at face value that the cargo was sold and title was transferred on the high seas, and we have made arguments that the complaint is not sufficient based on that. If I could just turn back to the question of mootness. When we asked the district court for a stay below pending appeal, the ministry opposed it, and they opposed it based on the argument that if the court denies a stay and proceeds to decide the legal questions at issue in this case, the parties will finally have resolution of the question of ownership over the disputed cargo. They urged the district court, this is pages 2402 and 2403 of the record on appeal. They urged the district court to move forward with hearing this case, even though they knew that the ship was moving away and not coming back. And they urged the district court to hear it because they alleged that the question of ownership is answerable by reference to what? The question of ownership is answerable by reference to the Iraqi constitution under their complaint. And there is a dispute before us as to what the meaning of the Iraqi constitution is. That's correct. That's between these two branches of government. And that's what in this lawsuit, they want a federal court to reach in and to decide. That is what the federal court below held that it could decide. I'm not talking about the red court below, I'm talking about where we are now. Your Honor, we're asking you to hold that a federal court cannot decide that issue. That it is not justiciable under the political question doctrine. But I thought the political question had to do with political questions within our system. It does, Your Honor. In other words, if we reach out and perform a function that the executive branch has been entrusted with, it's a separation of powers question. Within our system, not whether or not one of our courts can decide a case according to a foreign law. Your Honor, there are two prongs in the political question doctrine. I'd like to reserve the remainder of my time. But on judicially manageable standards, that question is not relevant. On textual commitment, it is. And our argument there is that under Occidental and Spectrum, in the absence of an executive branch determination on a question of foreign control over natural resources, that is a matter that the Constitution commits to the political branches. If I could reserve the remainder of my time. Thank you, sir. Mr. Dye. Your Honor. Judge Haynes, I'd like to start out where you started out. Let me ask you a question about this commercial exception. I understand that doctrine to be where there's a dispute between a buyer and a seller. In this exact situation, if the dispute was rather that this oil was being sold to some domestic concern, some other entity or whatever, and they got the delivery and then they found out that it was not the particular grade of fuel or whatever, and so the dispute was over that. The focus of that dispute would be on the commercial transaction of the buying and the selling. And that's not what this is about. The parties to this are fighting over the Iraqi Constitution as to who internally has that power, who owns the property itself. Now, the counsel suggested, well, my colleagues have guessed that political question of doctrine has its origins in separation of powers, and indisputably it does, Marbury v. Madison. Chief Justice Marshall said that I have to find that the commission did not invoke the discretion to issue, but it's pretty ministerial. That's the origin of that doctrine, and that's correct. However, as I understand it, I want to take a moment to explain where I'm coming from because I want you to answer this. When I look at the Sovereign Immunities Act, it's constructed so that the claim, to say the claim, you have to come within the exception itself. That's done in order to avoid the well-pleaded complaint doctrine and to ensure that those cases are in the federal courts, not the state courts, right? Are you with me so far? Now, what bothers me is that I don't see it, I have a hard time fitting that, that type of commercial dispute that's there of buyers and sellers. This is a fight internal to the government itself, and if it's not then within the commercial dispute, within that exception, then you've got a problem on the Sovereign Immunities Act itself. And that then also backs up to the very form of the political question doctrine, which we simply are not going to reach into the affairs of a foreign government to resolve their dispute. Now, that's where I am, and I'll shut up and let you argue. Okay. So let me start with your first question, which has to do with how is the commercial exception activated? Our cause of action is for conversion, Your Honor. In other words, an act of control over our property in derogation of our right to possess our property, in which we'll destroy our right to our property. So our claim is that we have titled this particular cargo of oil, the KRG— That would be fine if the person who hijacked your property wasn't your own government, part of your own government. Well, they're a subsidiary part of our own government. Well, that's right. This would be like the state of Texas. That exactly would be, and that's what really worries me. I can't imagine the state of Iraqi courts resolving this fight between Texas and the United States government. And then we would say, oh, it's just a commercial dispute. We have a long list of disputes like that. This court decided an issue exactly like that less than a month ago. As Judge Dennis said, courts do that all the time. The case I'm talking about is one that was relied on by the district court, the BP case, where the states of Tamaulipas and Veracruz in Mexico sued BP, claiming that they had the right to natural resources. And the whole issue in that case was— But BP is not a sovereign. No, BP is not a sovereign, but Mexico had separately filed its own lawsuit. And so BP came in and said, look, you don't have the right to—you don't have a proprietary interest in the natural resources of Mexico. And interestingly, Your Honor, the constitutional provision upon which the Republic of Mexico is relying on is almost identical to the— But who was telling Mexico they didn't have the authority? Actually Mexico had one lawsuit, and the states of Tamaulipas and Veracruz, which are states of the Mexican states, had their—a separate lawsuit. And BP was saying— But they weren't suing each other. The state—Veracruz wasn't suing Mexico. Their claims were not consolidated. They were separate lawsuits. But, I mean, that's the key distinction, is nobody's doubting, really, that the Ministry of Iraq could sue the John Doe buyer, which is why I was asking about him, because if we end up finding mootness, I want to know if we still have a John Doe buyer. The question is whether we should be taking cognizance of essentially the United States versus Texas. In Iraq, I agree, that would be a strange lawsuit. Right. So this is the flip side of that. Isn't it equally strange? So two—two-part answer. One, once—once the KRG brings the property into the jurisdiction of the United States, really they make it the problem of the courts of the United States. But it didn't ever get here. I mean, as I understand it, it sat off Galveston and never quite made it, which is why they said the admiralty stuff went away and you didn't appeal that. It's outside of the marshal's jurisdiction, which goes out 10 miles. But remember, this—this ship was in the Galveston lightering area. There's a—there's a provision of the Coast Guard laws under 30—Title 33, the CFRs, which designate where tankers have to go to be lighted ashore. So this tanker is actually too big to come into the Harris County Ship Channel. And so the—they are told by the Coast Guard where to park their ship, which is 60 miles off. That's within the jurisdiction of the United States. It's simply not within the jurisdiction of the marshal, who we were asking to go out and seize the cargo. So it was in the United States. And at the trial court level, the minister—the KRG said repeatedly that it was their intention to bring that specific cargo into the juris—into the port. Okay, but now that it didn't happen, for whatever reason, they—they turned around and left. Why haven't you—I mean, it would seem to me under Rule 41 you could non-suit this case. And why haven't you? If it's so moot and you don't want any more relief and you're done and now that the cargo's gone and off to parts unknown, you don't have any claim, then why wouldn't you just non-suit the case? Well— Why are we having to do it for you? Well, because it's on appeal. I mean, I can't stop this appeal by not— Why not? We have people do that all the time, say, well, you know, we settled or whatever, whatever. But here in your case— You're arguing that—I'm sorry, I'm talking— There hasn't been a—as I read Rule 41, there hasn't been a motion of summary judgment or an answer filed. They've just filed a motion to dismiss, and therefore you can non-suit it. So I mean, you know, we're happy to accept your non-suit if you want to do it and move on to the next case. Yeah. So part of the reason is, of course, we want to preserve the ruling on the Foreign Sovereign Immunities Act that the Court made below because it has practical application. And yes, they did leave. After they lost, they picked up and left, and basically are now arguing that the case is not moot. But just as you ask, Your Honor, what is the district court going to give to the Republic of Iraq when we get down below? We didn't ask for a declaratory judgment. We asked for a declaration of title, which you have to ask for if you're seeking to rid of sequestration. But so you're saying the case is moot, but you want to hold on to the district court opinion, which means that makes it effectively unreviewable, which doesn't seem right. It would seem like either you say, you know, the whole case is done, and we'll just have to wait for the next cargo ship to show up in Galveston or wherever, or we ought to be able to review this. It doesn't seem like you ought to be able to have your ship and get rid of it, too. Well, this is the whole issue of vacature, which this Court addressed in Staley v. Harris County and which the Supreme Court addressed in the Arizonas for Official English. And what they look at, Your Honor, and it's precisely the issue that you're raising is, well, what do we do with this order? And it's an equitable inquiry. Vacature of the district court order is an extraordinary circumstances standard, and they look at equitable remedies. So for instance, in the Staley v. Harris County, which dealt with the Ten Commandments at the Harris County Courthouse, the county removed that after they lost the case. And the Court basically asked them, well, why isn't this moot? And the county did not bring it to the Court's attention, and so they go through this equitable analysis on whether to vacate the district court's order and who caused the case to be moot. If the person causing the case to be moot was the loser below it, then that weighs against vacature. But you don't have a final judgment saying, remove the Ten Commandments, and then somebody goes and does it, and so now there isn't anything to fight about, or they say we're not going to bring it back, so we're done. Here you don't even have a final judgment. The only reason this is before us is this collateral order issue about the foreign sovereign immunities, and immunity tends to be directly appealable, and all this kind of stuff. So you don't have a final judgment saying anything. So if we were to simply say, we dismiss as moot, period, and we don't say anything else, what do you have that is a final enforceable judgment on anything? So the appellate jurisdiction of this court is found in 1291 and 1292. 1291 deals with final appeals. We are here on a cohen collateral order doctrine, which is a final order for purposes of appeal. And so the FSIA issue is actually up here as a final appeal under 1291. These other issues Yeah, but you don't have a final judgment doing anything. It has If you were to just go off into the hinterland and we just dismiss this as moot, we put a one sentence that said this case is dismissed as moot, I don't think you have anything. You can't get collateral estoppel on a legal claim, so you have an order, which you would have whether we vacated it or not. You would have an order by a judge thinking something. Not if I non-suited, because if you non-suit, that's as if the case never happened. And of course, whether or not this is collateral estoppel is an issue You would still be able, I mean, the order vacated or not still exists. It doesn't go away. And I've seen people argue, well, vacate it on other grounds or, you know, this or that. They argue it as a precedent. That's really all you have is one district judge's thoughts. As a precedent, you still have that regardless of what happens here unless we reverse it on the merits, the merits of the FSIA point. That is certainly a view that a court could take subsequently. A court could also take the view that the next court to hear this, if there is a next court to hear it, could take the view that the FSIA issue was fully litigated and went up on appeal on a co- and collateral order doctrine. Now, so, which brings us around to, yes, I mean, Your Honor, I think I still don't see what it gets you. It's not collateral. Collateral estoppel is on facts. It's not on what some judge thought the law was. The same judge who decided this could reconsider their own order, so a subsequent judge can do that too, unless you get a final judgment awarding relief and so on. Sure, Your Honor, but maybe it's useful for me to refer to a particular case, which is the NML capital case versus the Republic of Argentina out of the Second Circuit. And that was a very, the same kind of issue here, an issue on attachment. And there, the Second Circuit said no vacature because the order could have some practical meaning to the prevailing party in the next round. And with all due respect, I think that is an issue for the next court and not an issue for this court. Okay. I mean, we have to decide if we're going to vacate or not, if we . . . Yes, you do have to decide. Sorry, but I do think, with all due respect, it's our decision. Yes. Now, how some court will view all this later, you know, I don't know, and I don't really care at this point. And, of course, the vacature analysis, when you look at the case, the Staley case, the Bank Corp case, the Arizonans for official English case, they lay out rules, the equitable rules for vacature. And the equitable rules are who caused the case to be moot. Did those persons who have a duty to bring the mootness, the attention of the appellate court, bring that to the attention of the court? Did the persons who caused the mootness, are they threatening in some vague way to cause the problem again? All of those count against those people. And in each of those instances, that . . . those are actions that are actually attributable to the KRG. So every single factor that we know of on the equitable analysis of vacature weighs against the KRG who caused the mootness and lost below in favor of the Republic of Iraq. I do take your point that this may be a very empty precedent, but were I to non-suit, you know, the argument would be, well, you know, they didn't want to go to the Fifth Circuit and defend the decision that they got. Mr. Dye, have you pleaded or put at issue in any way the 100,000 barrels that were supposedly were towed somewhere? We did not. Third party. Can we take that into consideration? Yes. Although I do have to take my hat off to Judge Haynes because the district court was not able to get an answer from the KRG on that particular issue, and there's a lot of issues like this. Okay. There's not 100,000 barrels. There's not 100,000 barrels. You should take notice of that. And so . . . That's what they said. That suggests . . . and that's not part of our complaint. Our complaint was that they were going to destroy our title by selling it into the U.S. crude stream, thereby, you know, we would never be able to get that . . . Now you get to go to the Israeli Supreme Court to have it decided. I'm sure that will be very interesting. that it has gone to Israel, the oil. Yes. The oil is now in Israel. And, of course, that's a post-notice of appeal event, right? So I mean, Judge Miller didn't have that before him, and, you know . . . But that's what you're asking us to decide mootness on. So we have to look at the facts as they are, which is why I wanted to know about the 100,000 barrels. And I also wanted to know about John Doe. So do you concede there's not a John Doe in the U.S. too? I have no idea if there's a John Doe in the United States. Well, so if we were to find it moot, it's not moot as to John Doe, because if he took stolen property, then you would still have a claim against him. Yes, Your Honor. And, of course, we asked for discovery at the trial level, and we weren't given the opportunity to conduct discovery. Well, they're saying there is no John Doe in the U.S., so I guess your guy is in Israel. Apparently, there's not a John Doe in the United States. They brought the cargo here. Apparently, they had a buyer. I think there's evidence in the record that that was Lionel Bassel, and that they canceled the sale after the lawsuit arose. So yes. Well, if we affirm and allow this case to go forward, what can you possibly recover? Can you get a declaration of ownership? Can you get interest, anything to keep this case alive? Not really, Your Honor. And let me just—because the cost and interest came up— So you agree that it's moot? Yeah. That was in connection with our request to seize the oil. So just as a practical matter, if you're successful and you get a writ of attachment or a writ of sequestration, you have to take the physical oil into your possession, which incurs cost and interest. That never happened. All of that sort of relief we were asking for was dependent upon our success in actually getting the oil while the court made the decision. And Mr. Gottlieb said that we asked for the proceeds. Actually, first Judge Johnson, and then later—who's the magistrate judge that granted the initial writ of attachment—and then Judge Miller repeatedly said, look, this oil is out there. It was out there for seven months. It's costing a lot of money. It would be easier if you sold it and put it in the proceeds of the court. That suggestion did not originate with us, but of course we were perfectly happy because it would avoid the situation that we're in now, which is the case is moot. Any relief that you might possibly get in this case is going to have to be enforceable, if it is at all, against the foreign state here, between the two of you. So we're going to be resolving and giving an order of what you asked for. If it provides you any relief, if it doesn't provide any relief, then perhaps the case is moot. But whatever relief may be there, all you have is an American court adjudicating the rights of a sovereign itself, not third parties in dealing in commercial relationships with them. That's the problem I have. This is not where Acme Corporation enters into a dispute with the buyer that was buying this oil, and then they get into the question of the commercial. That's a commercial transaction. But what's happening here, the way this has been resolved, what the issues have come down to is a fight between the two of them, under your wacky constitution, what it means. Now, if you have an enforceable order, who is it enforceable against? To answer that question, who is that order enforced against? The sole remedy we sought was possession of the oil. It would have been enforceable against a million barrels of oil, and we would have been able to take possession of it. What we were trying to prevent was their destruction. Well, I'm not trying to—where we are today, what relief can anybody give this—anybody? Now, because they've taken the oil out of the jurisdiction, there is no relief. We didn't ask for a general— But this is a weird case where the plaintiff says it's moot and the defendant says it's not. And so that's why you're arguing what would seem strange, but you're saying it is moot because you wanted the oil and the oil's gone. We wanted the oil. Bottom line. That's what you're saying. And what they're really arguing for, Your Honor, is they want the political question decision decided, because that can be raised by a buyer. And what they want is an advisory opinion from the Fifth Circuit— No, I understand what they want. —so they can use it as a get-out-of-jail-free card to—they can show all of their buyers. That's my concern, is that if what you wanted was the oil and the oil's gone, then why are we still here? That's my concern. I think you are right in that the appeal should be dismissed as moot. Well, we have a choice by the court of—according to the United States Supreme Court as to whether we invoke the political question doctrine or mootness. We don't have to reach any of those questions. If, in fact, this order and this relief throughout would have expended itself only against the foreign sovereign. You're talking about the Sinakin case that was filed this morning? Both. I mean, I don't—no high cut just between the two parties. What's clear to me is that we're being asked to resolve an internal fight of Iraqi, that ultimately, whatever relief we give, that's between the two of you, not some third-party buyer or whatever else, is—it would require our deciding where the power within the Iraqi Constitution resides. Yeah. First, on your first point, Your Honor, we don't think you have pendent appellate jurisdiction to reach the political question doctrine and the act of state, because this has come up on a 1292—the FSIA issue is up here on a 12—I'm sorry, the other issues that were requested to come up on a 1292B, and the district court denied that. And so you're—the court is very constrained by the Swint case and the Thornton v. General Motors case. I'm constrained to say that we're not going to decide the case because of the political question doctrine that I can see. I mean, I don't think you can frame the issue to get where you want to go with that by escaping the resolution of the political question doctrine. We don't have to resolve it. We can do it on the basis of mootness alone, perhaps. But I'm suggesting to you that this reliance upon the commercial exception, it also doctrinally worked ties to the political question doctrine as well, because it simply reflects the fact that normally when we're talking about the commercial exception doctrine, we're talking about a sovereign that's selling product, whatever, it's not dealing with its regulatory function. It's just selling product and a dispute over that particular sale. And there are some of those disputes in this—of this factual matrix, but what we have is not that. What we've got are the two elements of the Iraqi government here fighting. I'm out of time, but if I could respond to that. That is exactly the question that Judge Dennis wrote upon in his concurrence in the Connecticut Bank of Commerce case. These folks have stepped out of their sovereign role and are engaging in the oil business. The commercial activity is selling oil. When that's done by a sovereign, it's no longer sovereign activity. It's commercial activity. And they're selling, basically, our oil. That's the gravamen of the complaint. That's right. And that statement makes perfect sense. When it is selling, and what he's talking about, selling to a non-sovereign, when it is selling. And the issue is not that. The issue is in the Iraqi government law and constitution, whether there was power or not to do that. Ultimately, this lawsuit circles down to that narrow question. You can frame it however you want to, but that's the question, with whatever consequence it is. The issue is who has title to this oil. And how do you answer that, other than by the Iraqi constitution? It's already been decided by the Iraqi Supreme Court in a case involving a different province of Iraq. It's a constitution. Well, what you're saying, well, we were to read the Iraqi decisions and decide under Iraqi law what the answer to that is. And when I have nothing here but the Iraqi government before me, one hand and left hand, I don't see why we ought to go there. Thank you, Mr. Dyke. I agree. I guess we better move on and let Mr. Shahr be happy for a while. If there's any time left, you have five minutes on rebuttal, Mr. Congressman. Thank you, Your Honor. If I could begin with the issue of mootness. There are two questions in mootness. One, is the case doctrinally moot because there is no live dispute between the parties that the court can fashion any effectual relief whatever for? That is the standard in charge. Well, what would be the effectual relief, given the point that Judge Higginbotham made? I understand the effectual relief when there's a boat sitting in the Houston ship channel with a million barrels of oil on it, that we can take that boat and we can do what we want with it, and it doesn't matter what the Iraqi courts think. But if we simply said, oh, we declare this or we declare that, then it has to go be enforced in this very same court you refuse to go and acknowledge. And so I don't really see what effectual relief we can grant once the oil is gone. Your Honor, a conversion case is not mooted when the property is no longer in the possession of the accused thief. Otherwise, any time someone got sued for conversion, they could simply transfer the property to somebody else and the case would be moot. They have asked— Right, but that's an action for damages. You can no longer go after the car if the car is gone. And they're saying all they wanted was the oil and everything else they want to go litigate in Iraq where you both say it belongs. Your Honor, it's not correct that they said below that all they wanted in oil is the possession of the oil. They don't have an emotional attachment to those barrels of oil. It's a commodity. And two separate occasions below, Record of Appeal 1205 and 2325, they represented to the district court that they would accept the cargo or its proceeds. They have never alleged— But the proceeds there would have been—I understand what they're doing. It's like substitute collateral. It's saying instead of having these cucumbers sit in this truck rotting, we'll go sell the cucumbers and put the money in place. That's not the same thing as a suit for damages at all. That's really substitute collateral instead of letting these things sit out there costing everybody a bunch of money. Your Honor, they have never alleged that our client is not in possession of those proceeds, never. They don't have a single allegation to that effect in their briefing or below. There is no reason that the district court, if it concluded that it had personal jurisdiction over us, that we were not immune, that it did not present a political question and it ruled for them on the merits, it could order that we turn over the proceeds, which is precisely what they've asked for. No, because it's a specific race when you're talking—R.E.S.—when you're talking about selling it, putting it in the registry of the court. Now it's just money. Now it's a suit for money damages. And that's not what they're seeking. That's different from the substitute collateral that apparently the magistrate judge and district judge proposed. Those NREM claims were dismissed by the district court below because they relied upon admiralty jurisdiction. The only— No, I understand that, but that was a solution they were trying to come up with over this issue of title to this ship that's now gone. Let me ask you this. What value do you get out of a declaration that you're immune if what you're trying to do is sell oil in the United States and those guys can still be sued because nobody is saying John Doe Buyer is immune or can't be sued. And so I don't understand if you're trying to sell oil in the United States and you don't want to be messing around with these lawsuits. So you get immune. You walk out. John Doe Buyer is left holding the bag. You think he wants that lawsuit? He wants to be in a lawsuit against Iraq? Your Honor, we can't speak for John Doe Buyer. What we know is that my client is a foreign sovereign that has suffered an adverse decision from the court below holding that we are not immune from lawsuit in the district court. They have said— But then if we dismissed it as moot, it's over. I don't understand why you wouldn't accept that. To me, it seems like a naked order that says you could have possibly been liable, but we never got there because the whole thing went away. Your Honor, the Sinechem case gives you the discretion to dismiss a case on any ground you choose. The reason you should not dismiss it on mootness grounds is because we will be back in the same position in a matter of months. They have promised to bring the same lawsuit. They promised it to the district court below in Record of Appeal pages 2402 and 2403. Is Turkey still letting y'all use our pipeline? The KRG oil exports and shipments continue to this day, Your Honor. If I could also point out, when the ministry filed its motion opposing expedition in this court, they filed that motion after they had alleged that the cargo had been sold and discharged in Israel. And they did not argue to this court that the case was mooted this time. In fact, what they said was—all they said was this case shouldn't be expedited for that reason. In page 14 and 15 of their brief, they even said the KRG has the right to appeal. They should not be now allowed to walk away from this case because they've decided they're no longer interested in it. The fact that relief has become more difficult to them does not meet this court's standard for dismissal at this point in the case. That is the MCI Telecom case. It's also the City of Erie case that we cited. How would the district court enforce an order that says you need to turn over the proceeds you got in Israel for this oil into the registry of the court in Galveston? How would that be enforced against your client? It could be enforced against anyone who tried to take or move the oil. They could use it here. They could use it in a foreign country. In the Christopher Village case, the plaintiffs had not sought— Okay, but Kurdistan's got a bank account or the equivalent thereof somewhere in Kurdistan, so we would have to show up and have an unknown court, because apparently there are no properly constituted courts in Iraq according to your client, enforce this order as against whatever bank accounts are there to go get these proceeds. Right. I mean, that's the problem. That's not the question. The question is not whether enforcement is difficult. The question is whether it's impossible. That's the— Well, it sounds like it is. If you're not going to recognize an Iraqi court and that's where your assets are, then I don't understand how we can grant effectual relief. That's only one of four or five different forms of relief. I see my time has expired. If I could answer the question— Be brief. That's only one of several forms of relief that they requested in their prayer for relief. I would urge the court to read the prayer for relief in their complaint— I did. I read the whole complaint. But it also asked the district court to retain jurisdiction over this dispute. It also asked the district court to issue a decree. All of those forms of relief are valuable to them in enforcing a judgment. And the fact that it has become difficult for them and they no longer can get possession of the physical barrels of oil does not make this case— Thank you, Mr. Gottlieb. Thank you, Your Honor. You know, it brings me to—your fine advocates brings to mind the old saying down in the east, Texas oil fights, you know, years ago, that whenever you get enough oil in the room, the arguments get slippery.